**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:09-CR-200 |
| | ) | |
| JANIS WILEY, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Government's Motion for District Court Hearing to Reconsider Ruling on Conflict of Interest Issue, filed on September 15, 2010. For the reasons set forth below, this motion is **DENIED**.

BACKGROUND

Attorney Scott Arthur presently represents Defendant Rachel Castillo in this case. Prior to this representation, Attorney Arthur was contacted by and met with Lindsay Kozinski regarding the possibility of representing her for the same alleged criminal conduct that resulted in the pending indictment against Rachel Castillo. Ms. Kozinski is currently a cooperating witness in this case and the Government anticipates Ms. Kozinski testifying at trial against the defendants, including Rachel Castillo.

Due to Attorney Arthur's prior dealings with Ms. Kozinski, the

-1-

Government asserts that Attorney Arthur cannot represent Defendant Rachel Castillo in this case. On August 25, 2010, the Government filed a motion seeking a hearing on the issue of conflict of interest. The Government argued that Attorney Arthur's continued participation representing Defendant Castillo was contrary to both Indiana's Rules of Professional Conduct and this Circuit's law. Magistrate Judge Andrew P. Rodovich conducted an evidentiary hearing on September 14, 2010. At the conclusion of that hearing, Magistrate Judge Rodovich denied the Government's motion. The next day, the Government filed a motion for this Court to reconsider Magistrate Judge Rodovich's ruling. This Court heard additional testimony from Ms. Kozinski on January 28, 2011.

DISCUSSION

Facts

Ms. Kozinski and Janice Wiley first met with Attorney Arthur to speak with him about their being stopped by the DEA on February 24, 2009. (Jan. 28, 2011, Tr. 5). Together, Ms. Kozinski and Janice Wiley met with Attorney Arthur and spoke with him about being stopped by the DEA. (Jan. 20, 2011, Tr. 6). Both Ms. Kozinski and Janice Wiley were looking for legal representation during this visit. (Jan. 28, 2011, Tr. 16).

Ms. Kozinski and Janice Wiley went together to speak with Attorney Arthur a second time. (Jan. 28, 2011, Tr. 7). During

this meeting, Ms. Kozinski and Janice Wiley each met with Attorney Arthur separately for approximately one-half hour apiece. (Jan. 28, 2011, Tr. 7). At this second meeting, Ms. Kozinski told Mr. Arthur that she wanted him to be her lawyer. (Jan. 28, 2011, Tr. 8). Although Ms. Kozinski does not remember the exact words of Attorney Arthur's response, she remembers Attorney Arthur responding in a way that led her to believe he could represent her. (Jan. 28, 2011, Tr. 9, 36, 37). As a result, Ms. Kozinski believed Attorney Arthur was her attorney. (Jan. 28, 2011, Tr. 9).

After their second meeting, Attorney Arthur had talked to the Government about a potential proffer with Ms. Kozinski. Ms. Kozinski then went to Attorney Arthur's office for a third time, this time to speak with him about his discussions he had with the Government. (Jan. 28, 2011, Tr. 27). Ms. Kozinski did not recall the details of her fourth meeting with Attorney Arthur.

The issue of attorney fees did not come up until Ms. Kozinski's fifth meeting with Attorney Arthur. (Jan. 28, 2011, Tr. 10). At this fifth meeting, Ms. Kozinski brought her parents to meet Attorney Arthur. (Jan. 28, 2011, Tr. 11, 26). Attorney Arthur told Ms. Kozinski that his attorney's fees would be approximately $30,000. (Jan. 28, 2011, Tr. 11). Believing that Attorney Arthur's representation was too expensive, Ms. Kozinski instead retained Attorney Kevin Bulger. (Jan. 28, 2011, Tr. 14).

From the first meeting Ms. Kozinski and Janice Wiley had with

Attorney Arthur up until the last time Ms. Kozinski spoke to Attorney Arthur at his office, Janice Wiley was also looking to try and have Attorney Arthur to serve as her attorney. (Jan. 28, 2011, Tr. 19). In one of the meetings where Ms. Kozinski and Janice Wiley jointly met with Attorney Arthur, he told them that he could not represent both of them, but that he would represent the first one of them who was able to retain him. (Jan. 28, 2011, Tr. 19).

Indiana Rules of Professional Conduct

Rule 1.9

The Government argues that Attorney Arthur cannot now represent Ms. Castillo on the very same matter for which he earlier provided representation to Ms. Kozinski. Thus, the Government asserts that Attorney Arthur's continued representation of Ms. Castillo would be inconsistent with Rule 1.9 of the Indiana Rules of Professional Conduct. Rule 1.9, entitled "Duties to Former Clients," states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent in writing . . ..

IND. R. PROF'L. CONDUCT R. 1.9.

As Rule 1.9 sets out an attorney's duties a former clients, a threshold question is whether Ms. Kozinski is Attorney Arthur's

former client. To answer this question, the Court must determine if Ms. Kozinski and Attorney Arthur ever maintained an attorney-client relationship.

Attorney-client relationship

The Government contends that an attorney-client relationship existed between Attorney Arthur and Ms. Kozinski. An attorney-client relationship can be created either expressly or impliedly. It is undisputed that there was no express agreement between Attorney Arthur and Ms. Kozinski. There was not an employment agreement executed, nor did Ms. Kozinski pay any attorney fees to Attorney Arthur. *Thayer v. Orrico*, 792 N.E.2d 919, 925 (Ind. Ct. App. 2003)(setting out how attorney-client relationship may be created expressly).

An implied attorney-client privilege can be created by the conduct of the parties. *Douglas v. Monroe*, 743 N.E.2d 1181, 1184 (Ind. Ct. App. 2001)(citation omitted). "Attorney-client relationships have been implied where a person seeks advice or assistance from an attorney, where the advice sought pertains to matters within the attorney's professional competence, and where the attorney gives the desired advice or assistance." *Id.* (quotation omitted). Notably, an attorney-client relationship exists "only after both attorney and client have consented to its formation." *Id.* (quotation omitted).

The record does not demonstrate that there was an implied attorney-client relationship. It is true that Attorney Arthur met with Ms. Kozinski on a number of occasions. However, all but one of those meetings were exploratory; Ms. Kozinski was meeting with Attorney Arthur in an effort to establish an attorney-client relationship. The only meeting that contained any substance was the meeting that took place as a result of Attorney Arthur speaking with the Government about a potential proffer. However, even though Attorney Arthur may have spoken to the Government about a potential proffer, this nominal assistance is not enough to show that Attorney Arthur intended to be Ms. Kozinski's attorney in this matter. See e.g. *In the matter of Kinney*, 670 N.E.1294, 1297-98 (Ind. 1996)(noting that and attorney's assistance in a discrete legal task does not, in and of itself, create an attorney-client relationship). Ultimately, there is nothing in the record that reveals Attorney Arthur intended to be, or believed he was, generally representing Ms. Kozinski in her criminal case.

Moreover, Ms. Kozinski herself provided conflicting testimony as to whether it was reasonable for her to believe Attorney Arthur was her attorney. At one point, Ms. Kozinski testified that she thought Attorney Arthur was representing her. (Jan. 28, 2011, Tr. 8-9). Later, Ms. Kozinski testified that Attorney Arthur told her and Janice Wiley that he would represent the first one of them who paid a retainer. (Jan. 28, 2011, Tr. 19-20). Admittedly, Ms.

Kozinski never paid any retainer to Attorney Arthur. Because Ms. Kozinski was told that he would represent the first one to pay a retainer and she never paid Attorney Arthur a retainer, she could not have reasonably believed that he was her attorney.

Ultimately, this Court does not find that Attorney Arthur consented to the formation of an attorney-client relationship. Because Ms. Kozinski was not a client but, rather, only a prospective client, Rule 1.9 is not controlling. Instead, it is Rule 1.18 of the Indiana Rules of Professional Conduct which must be examined.

Rule 1.18

Rule 1.18, entitled, "Duties to a Prospective Client," provides:

- (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

- (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.

- © A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter . . ..

IND. R. PROF'L. CONDUCT R. 1.18.

Under Rule 1.18, Attorney Arthur would not be able to represent Ms. Castillo in this case if he received information from Ms. Kozinski during their discussions that could be significantly harmful to her. After reviewing the transcript of the September 14, 2010, and January 28, 2011, evidentiary hearings, this does not appear to be the case. Moreover, the Government does not argue that Attorney Arthur received any such information. While Ms. Kozinski has stated that she does not want to be cross-examined by Attorney Arthur, there has been no mention of any information relayed by Ms. Kozinski to Attorney Arthur that would compel disqualification under Rule 1.18. IND. R. PROF'L. CONDUCT R. 1.18, comment 6 ("[T]he lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received from the prospective client information that could be significantly harmful is used in the matter."). Consequently, this Court does not find that Rule 1.18 of the Indiana Rules of Professional Conduct require the withdrawal of Attorney Arthur.[1]

Sixth Amendment Right to Effective Representation

In addition to the ethical issues addressed above, this Court must ensure that Attorney Arthur's prior dealings with Ms. Kozinski

---

[1] Nevertheless, the Court acknowledges that due to Attorney Arthur's discussions with prospective client Kozinski, certain prophylactic measures will need to be taken during trial.

do not result in constitutionally deficient counsel to Ms. Castillo.

The Sixth Amendment allows a defendant the right to select and be represented by her attorney of choice. *Wheat v. United States*, 486 U.S. 153, 159 (1988). Ms. Castillo has chosen Attorney Arthur to represent her in this case. (Sept. 14, 2010, Tr., p. 36). However, a defendant's right to counsel of her choice is not absolute; it is circumscribed in some respects. One such way is when a defendant's counsel of choice cannot provide effective representation due to a conflict of interest. See e.g., *Wheat*, 486 U.S. 161. Such representation would violate the defendant's Sixth Amendment right to counsel. *Id.* at 162.

A conflict of interest can require the withdrawal of an attorney either one of two situations. *Enoch*, 70 F.3d at 1496. First, if the attorney has "an actual conflict of interest adversely affect[ing] his [] performance." *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). This type of conflict is typically found when a lawyer "engages in simultaneous representation of codefendants in a criminal case because exculpating one client may depend on inculpating the other." *Id.* Nevertheless, an actual conflict can also arise in cases of successive representation when "the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information." *Id.(citing United States v.*

*Agosto*, 675 F.2d 965, 971 (8th Cir. 1982); *Ross v. Heyne*, 638 F.2d 979, 983 (7th Cir. 1980)).

Here, the Government claims Attorney Arthur has an actual conflict of interest in this case based on its assumption that Ms. Kozinski was Attorney Arthur's former client and is expected to testify at trial. However, as established above, Ms. Kozinski was never Attorney Arthur's client; she was merely a prospective client. The Government has failed to address how Ms. Castillo's Sixth Amendment right would be violated by Attorney Arthur's brief interaction with a prospective client. This Court finds that Attorney Arthur can provide continued representation of Ms. Castillo and that representation would satisfy Ms. Castillo's Sixth Amendment right to counsel.

**DATED:  February 28, 2011**          /s/RUDY LOZANO, Judge
                                        **United States District Court**